597 A.2d 701

**Diane PLOWMAN**

v.

**Bradley PLOWMAN, Appellant.**

Superior Court of Pennsylvania.

Argued July 30, 1991.

Filed Oct. 7, 1991.

James Mahood, Pittsburgh, for appellant.

Robert J. Fall, Pittsburgh, for appellee.

Before McEWEN, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the final order of the Court of Common Pleas of Allegheny County granting legal and physical custody of a minor child to appellee/mother, subject to the partial custody of appellant/father. We affirm.

Appellant Bradley Plowman (hereinafter "father") and appellee Diane Plowman (hereinafter "mother") were married on May 28, 1983. During the course of the marriage, they had one child, Jason Plowman. On September 13, 1988, mother filed a complaint in divorce against father. In the complaint, she sought custody of Jason. On January 6, 1989, the parties agreed to a custody order which awarded primary physical custody to mother and granted partial physical custody to father.

Later that year, mother filed a petition for modification so that she could move to Gaithersburg, Maryland with Jason to accept employment as a medical assistant. In immediate response, father petitioned the court for a writ of *ne exeat* to prevent mother from moving to Maryland with the minor child. Judge Kaplan of the Allegheny County Court of Common Pleas Family Division entered an order which denied modification of the custody order as well as father's petition for writ of *ne exeat*, and *sub silentio* allowed mother to relocate to Maryland with Jason. He ordered an expedited custody conciliation hearing if the parties could not agree on a visitation schedule. Judge Kaplan also ordered the court appointed psychologist to consider the change in circumstances in conducting his evaluation of Jason. On June 23, 1989, father filed a petition for modification of custody. On June 27, 1989, the parties entered into an interim order of custody which provided that both parties maintain joint legal custody of

Jason while allowing mother primary physical custody of the child in Gaithersburg. Mother and Jason moved to Maryland in July of 1989.

Between that time and the time of the full custody hearing in July, 1990, appellant filed three petitions for special relief alleging that mother failed to adhere to the interim custody order by prohibiting his access to Jason. On July 17, 1990, a full custody hearing was held before Judge Baer of the Allegheny County common pleas court family division. In his opinion, Judge Baer determined that mother displayed a natural ability to parent which made her the ideal primary caretaker for Jason. He found that upon her arrival in Maryland, she enrolled Jason in an excellent school, further indicating her dedication to the child and willingness to make sacrifices for the child. He also found that when mother vacated the marital residence, she prohibited father from seeing the child, with one exception, until establishment of a court order. Although mother abided by the order, she treated it mechanically, disregarding any flexibility to observe the child's best interests. Mother has generally not made the child available for father's telephone calls and would not allow the child to visit with father when she is in Pittsburgh unless required by court order.

The trial court also found that father is an understanding and thoughtful person who has a close and supportive relationship with his family. Judge Baer noted that although father had a previous bout of depression and related alcohol and drug problems, he overcame those problems which consequently had no bearing on the Court's decision. He found that when mother left the marital residence in September, 1988, father's relationship with Jason was cut off by mother's unilateral actions until January, 1989. Since then, father remained a part of the child's life and has done as well as could be expected to establish and maintain his role as a father under difficult circumstances.

Judge Baer gave credence to the opinion of the court appointed psychologist, Dr. Rosenblum, who found that the child's attachment to mother was stronger than the attach-

ment to his father. Judge Baer concluded that mother has been generally uncooperative and difficult with father's partial custody and in this regard has not served the child's best interests. He stated, however, that one parent's ability to promote a continuing relationship with the other is only one factor to be considered, and in this case, was not a sufficient factor to justify a removal of the child from the mother and an award of primary custody to the father.

Judge Baer subsequently issued an order granting mother physical and legal custody of Jason subject to the partial custody of father. The order was drafted specifically to allow father a continuing relationship with the child father without any interference from mother. This timely appeal followed in which father raises three issues for our review:

1.  Did the court err in permitting the mother to move out of the jurisdiction with the minor child without holding a hearing and making a determination of the child's best interests;

2.  Did the court err in failing to adequately consider the mother's interference with the father's relationship with the child, her refusal to accommodate a relationship between the father and the child, and the father's parenting skills in making its determination;

3.  Did the court err in excluding evidence offered by the father relating to the job opportunities and salaries for the mother in the Pittsburgh area and in finding that the mother had legally compelling reasons to move?

Before addressing these claims on their merits, however, we must determine whether father's first issue on appeal is properly before us. Mother has opposed our consideration of the order allowing her to relocate with Jason to Maryland on the grounds that father did not immediately appeal Judge Kaplan's order under the collateral order doctrine or by certification of the appeal, pursuant to 42 Pa.C.S.A. § 702(b).

■ The collateral order doctrine allows an appeal of an interlocutory order if certain conditions are met. As this court has set forth previously:

> Under [*Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)], an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Kronz v. Kronz*, 393 Pa.Super. 227, 232, 574 A.2d 91, 93–94 (1990)(citation added). Under this test, we find that the order issued by Judge Kaplan in this case was not appealable. While father's right is extremely important and deserves consideration, we do not find that the order was separable from and collateral to the main cause of action. Here, father filed a petition to restrain mother from removing the child from the jurisdiction. The court denied this petition and allowed mother to relocate with the child. In effect, the issue of where the child should live is intertwined with the issue of which parent should maintain custody over the minor child.

We are also unpersuaded by mother's argument that father could have sought certification to appeal. Certification of an interlocutory appeal is not automatic. A party must obtain certification from the lower court and permission from this court before an appeal may be had. 42 Pa.C.S.A. § 702(b); Pa.R.A.P. Rule 1301, *et seq.*, 42 Pa. C.S.A. Counsel for mother has not provided us with a rule of law, nor has our exhaustive research found one, which prohibits a party from appealing an interlocutory order where that party did not seek certification for interlocutory appeal based on that order. Having determined that the issue raised by father is properly before us, we turn to the merits of father's appeal.

In his first argument, father avers that Judge Kaplan erred in entering an order allowing mother to relocate with

Jason to the Washington D.C. area without holding a hearing to consider the child's best interests.[1] He alleges that because the full hearing on custody occurred one year later, the court based its decision on the new status quo created after the move. This, he contends, deprived him of due process.

Judge Baer found this issue moot because he held a subsequent evidentiary hearing on the issue of custody. Therefore, a review of Judge Kaplan's decision would have subverted the court's ultimate obligation to review the best interests of the child as of the time of the hearing under the facts as they then existed.

This court has previously held:

As a general rule an actual case or controversy must exist at all stages of the judicial process, and a case once "actual" may become moot because of a change in facts.... An exception is made, however, for cases in which the issues are capable of repetition but likely to evade review if the general rule on mootness is applied.... Thus, an action will not be found moot when the challenged action is in its duration too short to permit full litigation and there is a reasonable expectation that the same complaining party will be subject to the same action again.... Where the same party will not be subject to the harm again and the action is not a class action, still, the case will not be found moot if the issues capable of repetition but likely to evade review are "substantial questions," or "questions of public importance."

*In re Estate of Dorone*, 349 Pa.Super. 59, 65, 502 A.2d 1271, 1274 (1985) (citations omitted). Father alleges that he was denied procedural due process since he was not afforded a full evidentiary hearing before the court allowed Jason to relocate in Maryland with his mother. In a case such as this, we could never reach this issue because appellant would necessarily be forced to delay his appeal until a final

---

1. We interpret father's use of the term "hearing" as referring to a full evidentiary hearing on the custody issue to determine whether the move is in the best interests of the child.

custody order had been entered. According to the trial court, the issue became irrelevant once final custody was determined. However, the non-custodial parent's right to a proper determination of whether the custodial parent may move out of the jurisdiction with the minor child is substantial enough to require our consideration of the proper procedures to be implemented at such a juncture. We therefore turn to the merits of father's appeal.

Due process is a concept incapable of exact definition. Rather, it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant. *Corra v. Coll*, 305 Pa.Super. 179, 182, 451 A.2d 480, 482 (1982). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). We have previously stated:

> The right of a litigant to an in-court presentation of evidence is essential to due process: "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine witnesses."

*Hall v. Luick*, 314 Pa.Super. 460, 463, 461 A.2d 248, 250 (1983) *citing Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 300 (1970). We find that due process requires a full evidentiary hearing to be held either before the child is moved from the jurisdiction or within a reasonable time thereafter.

Our decision rests on the substantial rights of parents to maintain a continuing and meaningful relationship with their minor children. However, where the parents disregard the rights of one another, or as here where one parent displays antipathy towards the other, it becomes the responsibility of the court to ensure fairness of both procedure and result in a custody action.

While the best interests of the child are more closely allied with the interest and quality of life of the custodial

parent, *Gruber v. Gruber,* 400 Pa.Super. 174, 183, 583 A.2d 434, 438 (1990), this factor must be balanced against an appreciation of and sensitivity to the mutual interest of the child and the non-custodial parent in maintaining as healthy and loving a relationship as possible. *Id.* As Judge Beck stated in *Gruber:*

> The task of this court is to sacrifice the non-custodial parent's interest as little as possible in the face of the competing and often compelling interest of a custodial parent who seeks a better life in another geographical location.

*Id.* In this context, we note that while the custodial parent has the right to make decisions concerning his or her welfare and the welfare of the minor children, that parent has a responsibility towards the non-custodial parent to maintain the relationship between the minor children and the non-custodial parent. This may only be accomplished where the court is permitted to decide custody before the minor child is moved from the jurisdiction. In *Gruber* we developed a three part test to facilitate the trial court's determination of whether the best interests of a minor child are served by moving outside of the jurisdiction with the custodial parent or remaining in the jurisdiction with the non-custodial parent. We now decide *when* those interests must be balanced. We find that the same competing interests found in *Gruber* mandate that the balancing must be made before the child is permitted to move from the jurisdiction, or under exigent circumstances, within a reasonable time thereafter.

We make no requirement for a hearing when the two parents are able to arrive at a mutual decision regarding a minor child's move from the jurisdiction. In the absence of an agreement, however, the non-custodial parent has a compelling right to be heard as to whether such a move is in the best interests of the minor child. In fact, such a hearing may be his or her last meaningful opportuni-

ty to be heard on the question of custody.[2] We therefore hold that where either parent files a petition which raises the issue of whether it is in the best interest of the child to move with the custodial parent outside of the jurisdiction, a hearing must be held either before the move, or under exigent circumstances, within a reasonable time thereafter.

We find that our Rules of Civil Procedure also support this result. The rules provide, in pertinent part:

No judgment may be entered by default or on the pleadings.

Pa.R.Civ.P. Rule 1915.9, 42 Pa.C.S.A. While this rule ostensibly applies to final orders of custody, Rule 1915.9, Explanatory Note, we find it applicable where the result of any order substantially affects the rights of either parent, or the minor children.

In the case *sub judice*, the court allowed no full evidentiary hearing to be held on whether the best interests of the child were served by allowing him to move with mother to Maryland. Nor is there any indication that Judge Kaplan entertained oral argument on the issue. This was error. The lower court was obligated to entertain a full evidentiary hearing on the issue of modification of custody before allowing even a *de facto* modification. The trial court here waited over one year before having a full evidentiary hearing on mother's custody modification petition. During this time period, father's ability to defend his position eroded because the more time Jason was allowed to stay in Maryland, the more it could be argued that it was in his best interests to remain in Maryland under the new *status quo*. Given the compelling interests of the noncustodial parent involved here, the court's delay in holding the evidentiary hearing was unreasonable.

In *Gruber, supra*, we set forth the following three factors for the trial court to utilize in determining whether

2. If a parent decides to move outside of the jurisdiction with the minor child without a consent agreement, or without permission of the court under the circumstances enunciated, the trial court should utilize its contempt powers to force the custodial parent's compliance.

a custodial parent shall be permitted to relocate a geographical distance from a non-custodial parent:

1. the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the child and is not the result of a momentary whim on the part of the custodial parent;

2. the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it;

3. the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Id.*, 400 Pa.Superior Ct. at 184–85, 583 A.2d at 439. These considerations must then be factored into the ultimate consideration of the court, which is to determine what is in the best interests of the child. *See Lee v. Fontine,* 406 Pa.Super. 487, 594 A.2d 724 (1991), at —, 594 A.2d at 726 (any judicially determined preconditions may amplify, but do not alter, the best interest standard).

After reviewing the record we find that Judge Kaplan failed to consider the impact of any of these concerns when deciding to allow mother to relocate with Jason. However, we cannot redress this error by eliminating all the proceedings that have occurred until this point. Our review must be based on the best interests of the child at the time of the present hearing. *Commonwealth ex rel. Gorto v. Gorto,* 298 Pa.Super. 509, 514, 444 A.2d 1299, 1301 (1982) (facts as of the time of hearing are the foundation for determination of the court). In custody proceedings, the paramount concern is the welfare of the children and all considerations, including the rights of the parents, are subordinate to the children's physical, intellectual, moral spiritual and emotional well being. *Constant A. v. Paul C.A.,* 344 Pa.Super. 49, 65, 496 A.2d 1, 9 (1985). We cannot ignore the last two years of the child's life in Maryland as though they never occurred. Therefore, we find that the trial court was

correct in determining that it would be useless to pass judgment on the prior decision, but could appropriately consider the effect of that decision on the welfare of the minor child.[3]

■ Father also contends that the lower court failed to adequately consider the mother's interference with the father's relationship with the child, her refusal to accommodate a relationship between the father and the child and the father's parenting skills in making its determination. Implicitly, father argues that the trial court in the custody hearing failed to consider those factors enunciated in *Gruber, supra.* We disagree.

> On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the factfinding function of the trial court in order to substantiate our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Lee,* at 725. Our review of the record finds that Judge Baer adequately focused on the hostilities between mother and father which caused mother to hinder the relationship between father and the minor child. We find the following discussion of the lower court opinion:

> The father has a close and supportive relationship with his family, which has helped the father and supplies a

---

3. We note that no court can adequately address the contempt both mother and father maintain against one another. Certainly, this discord affects the minor child adversely and is not in his best interests. We advise the parents to set aside their individual preconceived notions and truly consider the best interests of the child, not their own preconceived notions.

supportive, loving environment for the child. The would also be of benefit to the child and will be of benefit to the child as the child grows.... Between the fall of 1987, when the father returned to the marital residence, and the fall of 1988, when the mother left the marital residence, the father saw the child extensively and developed a good, loving, supportive father-son relationship with the child. When the mother left the home permanently in the fall of 1988, the father's relationship was cut off by the mother's unilateral actions until January 1989. Since January of 1989, the father has remained a part of the child's life and has done as well as could be done to establish and maintain his role as father under difficult circumstances. The father is a good father, who participates actively in the child's life and has a close and loving relationship with the child.

The mother left the marital residence permanently in the fall of 1988 and prohibited the father from seeing the child, with one exception of four hours for the next hundred days. The mother, after establishment of the court order at the end of that hundred days. abided by that court order by and large; however, the mother has treated the court order mechanically and she has shown no recognition of any need for flexibility to observe the child's best interests. The mother has generally not made the child available for the father's telephone calls. The mother concedes candidly that when she is in Pittsburgh, unless she is required by court order to allow the father to see the child, she prohibits the father from seeing the child.

Based upon all of these facts, the Court enters the following conclusions of law. Both mother and father possess good parenting skills and are both equally good parents, who are dedicated to the child.

The mother has generally been uncooperative and difficult with the father's partial custody and this has not served the child's best interest; the father would do more

to promote partial custody today than the mother. If this court were to decide this case solely on the factor of cooperation between the parents and the variable of which of these parties would be more conscientious in allowing the other to see the child, it would decide this case for the father; but that is only one factor to be considered, and, after reviewing it carefully, it is not a sufficient factor in this case to justify a removal of the child from the mother and awarding of custody of the child to the father.

Judge Baer examined mother's recalcitrance in hindering father's access to the minor child and specifically determined that it was not a compelling factor to award physical custody to father. Thus, Judge Baer appropriately drafted a specific custody order to preclude mother from denying father access to Jason. Furthermore, Judge Baer also concluded that mother moved to Maryland for better job opportunities in her chosen profession. We therefore find that Judge Baer adequately addressed the concerns found compelling in Gruber, supra. His conclusions are supported by the record and are reasonable. We will not disturb them on appeal.[4]

██ Finally, appellant argues that the trial court erred in excluding evidence of job opportunities and salaries in the Pittsburgh area and in finding that the mother had legally compelling reasons to move. After careful review, we find appellant's argument meritless. A trial court has wide discretion in ruling on the relevancy of evidence, and its rulings thereon will not be reversed absent an abuse of discretion. *Dunkle v. West Penn Power Co.*, 400 Pa.Super. 334, 337, 583 A.2d 814, 815 (1990). Evidence which "tends

4. We note that appellant's written argument on this point is an attempt to relitigate the issues already addressed by the trial court. This court has consistently held that it is inappropriate for the Superior Court to make factual determinations based upon conflicting evidence. *Lanard & Axilbund, Inc. v. Muscara,* 394 Pa.Super. 251, 259–60, 575 A.2d 615, 619 (1990).

to establish facts in issue or in some degree advance the inquiry" is relevant. *Scullion v. EMECO Industries, Inc.,* 398 Pa.Super. 294, 301, 580 A.2d 1356, 1360 (1990).

■ In this case, father attempted to introduce evidence that mother made certain wages between 1982 and 1985. He argues that this evidence tends to prove that she could have obtained employment in the Pittsburgh area instead of relocating to Maryland. We do not dispute that father may inquire into mother's motives in moving to Maryland. *Gruber, supra.* Nor do we dispute that mother's ability to obtain similar employment in Pittsburgh may be relevant to her motives. However, the relationship between the evidence offered here and mother's present ability to find similar work in Pittsburgh is tenuous at best. Mother had studied to become medical assistant. Therefore, evidence not relating to her job search in that profession would be irrelevant. Moreover, her ability to obtain employment in 1982 does not have any impact on her ability to find employment in 1989. External factors, such as the employment rate, the financial status of the Pittsburgh economy, and mother's educational achievements after 1982, have an effect on her subsequent job search. We find no abuse of discretion in the trial court's exclusion of this evidence.

Order affirmed.

McEWEN, J., concurs in the result.