**Cade v. Cade**

*Bernard Mendelsohn,* for plaintiff.
*Jill Gehman Koestel,* for defendant.

LASH, *J.,* May 15, 2009—The issue before this court is whether the parties' child custody proceedings should be heard in Berks County, Pennsylvania, or in the Commonwealth of Kentucky. The parties are the natural parents of a minor child, Olivia G. Cade, born July 18, 2007. Plaintiff, Keith Andre Cade (Father), is, and has been at all pertinent times, a resident of Berks County, Pennsylvania. Defendant, Heidi Nicole Cade (Mother), is currently a resident of Parksville, Kentucky. The minor child has always resided with Mother.

Mother contends that she and the minor child moved to Kentucky into the home of the maternal grandparents on August 20, 2008, and have resided there ever since. No custody action was initiated in either state until March

2009, when Mother filed in Kentucky, in conjunction with a divorce complaint.[1] Mother argues that since the minor child resided in Kentucky for a period in excess of six months prior to the institution of court proceedings, the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA),[2] establish the Commonwealth of Kentucky as the state with jurisdiction over the within custody issues.

Father disputes Mother's allegations, claiming that Mother did not move to Kentucky until sometime in early 2009. He was never made aware of Mother's relocation until he received the divorce and custody documents Mother filed in Kentucky sometime in March 2009. He responded by filing the within action on or about April 2, 2009, requesting that this court make disposition of the child custody issues. Father also argues that under the doctrine of *Plowman v. Plowman,* 409 Pa. Super. 143, 597 A.2d 701 (1991), Mother was required to file a petition with this court seeking permission to move outside of the jurisdiction prior to doing so.

This court held a hearing on April 29, 2009 to obtain an evidentiary record on the timing of Mother's relocation. Both Mother and the maternal grandmother testified that Mother and the minor child have resided in Kentucky, in the home of the maternal grandparents, since August 20, 2008. Mother's testimony was supported by evidence that she contacted the Department of Public Welfare of the Commonwealth of Kentucky to obtain food stamps and medical assistance, and that she contacted the Kentucky Department of Transportation to obtain a driver's license in the Commonwealth of Kentucky. Further, she notified

---

1. Docket No. 09-3926, Circuit Court—Family Division, Boyle County, Kentucky.

2. 23 Pa.C.S. §5401, et seq.; KRS 403.400 to 403.630.

the Social Security Administration of her change of address to enable them to send the minor child's benefits checks to Kentucky.[3] All of these notifications took place shortly after the date Mother states she relocated, August 20, 2008.[4]

We find Mother's evidence to be credible. Both Mother and the maternal grandmother appear truthful in their statements. Further, we find it highly unlikely that Mother would seek welfare benefits in Kentucky if she was still residing in Pennsylvania. Also, transferring the Social Security checks from Pennsylvania to Kentucky, if Mother were still residing in Pennsylvania, would make no sense.

For his part, Father was not able to provide any specifics supporting his belief that Mother did not relocate until January of 2009. From July 2008, when the parties became estranged[5] until the time Father received the divorce and custody documentation from Kentucky in March 2009, Father had no contact with the minor child, other than on one occasion in December 2008 at the home of Mother's grandparents,[6] where Mother had resided prior to her relocation. Father had not heard from Mother, and when he visited with the minor child in December of 2008, he assumed that Mother and the minor child were continuing

3. The minor child suffers from Downs syndrome and receives Social Security benefits.

4. According to Mother's exhibits, Mother applied for food stamp benefits with the "Cabinet for Health and Family Services Department for Community Base Services" on August 29, 2008. The Social Security residence change was effective August 24, 2008.

5. The parties separated in March 2008, but continued to have contact until June or July 2008.

6. We also note that Father had Mother's cell phone number and could have contacted her. The parties dispute why Father did not stay in touch, Mother claiming that Father had no interest in speaking with her or having a relationship with the minor child, and Father stating that Mother made it clear to him that she did not want him contacting her.

to reside there. In fact, however, Mother had already relocated to Kentucky, but had returned to Berks County, Pennsylvania, for a visit with her grandparents, and at that time, contacted Father to arrange a visit. She did not advise Father of the relocation, allowing Father to erroneously assume that she and the minor child were still residing with Mother's grandparents.

Section 5421 of the UCCJA establishes when a court of the Commonwealth of Pennsylvania has jurisdiction to make a child custody determination, providing as follows:

"*(a) General rule.*—Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

"(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

"(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

"(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

"(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

"(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

"(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

"*(b) Exclusive jurisdictional basis.*—Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this Commonwealth.

"*(c) Physical presence and personal jurisdiction unnecessary.*—Physical presence of or personal jurisdiction over a party or a child is not necessary or sufficient to make a child custody determination."

Under these circumstances, it is apparent that the Commonwealth of Kentucky has jurisdiction. Kentucky is the home state of the minor child and was so for six months prior to commencement of the proceedings in Kentucky. None of the provisions in the UCCJA confers jurisdiction on the Commonwealth of Pennsylvania. We, therefore, agree with Mother and find that section 5344 of the UCCJA is dispositive, that Kentucky is the sole state with jurisdiction.

We also find that the holding in *Plowman* cannot be applied in this case. In *Plowman,* the Pennsylvania Superior Court determined, to satisfy due process concerns, that when one parent seeks to relocate to another jurisdiction with a child, a full evidentiary hearing should be held either before the child is moved from the jurisdiction or within a reasonable time thereafter. The court specifically

stated that it was concerned with the rights of parents to maintain a "continuing and meaningful relationship with their minor children." The court also noted that where one parent disregards the rights of another or displays antipathy towards the other, it is the court's responsibility to "ensure fairness of both procedure and result in a custody action." 409 Pa. Super. at 151, 597 A.2d at 706.

However, before a court can hold an evidentiary hearing, it must have subject matter jurisdiction, which it acquires when one of the parties initiates a custody action. In this case, this court was unable to hold any type of hearing or otherwise respond until April of 2009, when Father filed the within action. By that time, the minor child had been residing in Kentucky for over seven months, sufficiently establishing Kentucky as the minor child's home state. The courts of Pennsylvania were no longer available to Father.

Father had ample opportunity to file an action in Pennsylvania at a time when Pennsylvania would have had jurisdiction, but did not do so. The fact that Mother had not remained in contact with him, or that Father was unaware that the minor child was now residing in Kentucky, did not preclude him from initiating proceedings with this court prior to the change in the minor child's home state status.

We enter the following order:

## ORDER

And now, May 15, 2009, upon consideration of the request of plaintiff for special relief contained in Count II of the complaint and after hearing held, this court finds that under the provisions of the Uniform Child Custody Jurisdiction Act, the home state of the parties' minor child is Kentucky, and that Kentucky has sole jurisdiction over the child custody proceedings of the parties. Accordingly, the above-captioned action is hereby dismissed.