J-A09043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.A.U. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.L.U. N/K/A C.L.G. | |
| Appellant | No. 3082 EDA 2014 |

Appeal from the Order entered October 24, 2014
In the Court of Common Pleas of Lehigh County
Domestic Relations at No: 2008-FC-293

BEFORE:  BOWES, DONOHUE, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 18, 2015**

Appellant, C.L.U. n/k/a C.L.G. (Mother), appeals from an order that denied her petition to relocate from Lehigh County to Bradenton, Florida with A.M.U. (Child), the daughter of Mother and C.A.U. (Father).  Upon review, we conclude the trial court did not abuse its discretion in denying Mother's petition.  We therefore affirm.

These proceedings began when Mother sought to relocate to Bradenton, Florida, because her current husband, S.G. (Stepfather) obtained a new job there.[1]  Mother has three children with three different fathers.  A.B., the oldest, is 15 and the son of J.B. (First Paramour).  Child is a nine-

_____

[1] We take this factual background from the notes of testimony of the custody trial and the October 27, 2014 trial court opinion.

year-old girl. The youngest, N.G., is three and the daughter of Mother's current husband, Stepfather. This case concerns custody of only Child. First Paramour consented to relocation *vis-à-vis* A.B. in his custody case, at another docket.

Mother and Child's Father were married in 2005, and Child was born five months later. While they were still married and living together, Mother, Father, Child, and A.B. relocated from Northampton, Pennsylvania, to Florida for a year and a half, after Mother successfully petitioned for relocation of A.B. over First Paramour's objections. The family later moved back to Pennsylvania.

In 2008, Mother and Father separated. Mother remained in Emmaus, Lehigh County, and Father moved in with his parents, in Allentown. Father filed for divorce and custody of Child. The parties eventually agreed to entry of a final custody order. In relevant part, the parties shared legal custody and shared physical custody on an alternating three-day schedule.

Mother began seeing Stepfather, and in 2009, she moved to Bethlehem with him, Child, and A.B. In October 2010, Mother, Stepfather, A.B., and Child moved to Slatington.

On January 12, 2011, the trial court entered a decree finalizing the divorce between Mother and Father. In February 2012, Mother married Stepfather, and their child (her third), N.G., was born seven months later. In February 2012, Mother, Stepfather, and the children moved from

Slatington to Emmaus. The move resulted in Child changing schools, from Northern Lehigh to East Penn during first grade.

At some point in 2012, Mother began to receive temporary disability, *i.e.*, Social Security Disability Insurance (SSDI), because of complications that occurred during her pregnancy with N.G. The trial court found that, as a result of her disability, Mother is not financially independent. Father, for his part, has a degenerative disk disease, and receives Supplemental Security Income (SSI). Father also is prescribed prescription pain medication to alleviate pain associated with his condition. Mother and Father are currently 35 and 44 years old, respectively.

On December 20, 2012, the parties entered into a new stipulated custody arrangement, whereby they shared physical custody of Child on a weekly alternating basis. Sometime after entry of the December 20, 2012 order, the parties agreed to modify their schedule, considering transportation and Child's schooling. Under the modification, Father had physical custody of Child every weekend and one night during the school week. This arrangement continued until 2014.

Child began kindergarten at Peters Elementary School in September 2010, in the Northern Lehigh School District. She started first grade there but, as mentioned above, changed to the East Penn School District because of Mother and Stepfather's move in early 2012. While Mother had custody of Child, Child was frequently absent from, or late to, school. Child was in special reading classes in second and third grades. She exhibited frustration

with school while in third grade, and her teacher reported that Child was reading slightly below grade level. Child, however, did not have an Individual Educational Plan. *See* Def.'s Ex. 30, at 2.

Mother tended to schedule and attend Child's medical and dental appointments. In fact, the record shows she scheduled such appointments without input from, or notice to, Father—in contravention of the parties' custody orders. Without Father's knowledge, Child's pediatrician referred her for a neuropsychological evaluation on September 3, 2013. The pediatrician also referred Child to see a developmental physician.

On November 21, 2013, Child received a psychological evaluation at the Kennedy Krieger Institute (KKI) in Baltimore. Mother described Child as a "very emotional" child, who had frequent temper tantrums and needed a warm bath to calm down. *Id*. at 1. Mother reported that Child had problems completing complicated tasks, and that she became "dramatic" when her routine was disrupted. Mother and Stepfather were present for the evaluation. *Id.* The evaluating psychologist concluded that Child suffered from Adjustment Reaction with Mixed Disturbance of Emotions and Conduct. She recommended a speech/language evaluation, and treatment of Child's adaptive skills at home. Mother did not timely notify Father of Child's referral to, and evaluation by, KKI. Rather, he obtained a copy of the KKI report from Child's school through his lawyer.

Mother had Child receive a follow-up evaluation at KKI in March 2014. In addition, on February 12, 2014, Child was given an audiology evaluation

at Lehigh Valley Hospital. The doctor found Child has a moderate Auditory Processing Disorder (APD). At the follow-up evaluation with KKI in March 2014, Mother reported that Child is inattentive, hyperactive, and impulsive. The psychologist concluded that Child did not have Attention Deficit Hyperactivity Disorder (ADHD). The psychologist found that Child is of average-range intelligence with language difficulties.

Stepfather had been employed by Automated Data Processing in the Lehigh Valley. In 2013, Stepfather learned that he and many other workers were going to be laid off. Stepfather began to look for new job opportunities, though the trial court noted he provided no evidence to corroborate his testimony that he looked for new jobs in the Lehigh Valley. Through a work contact, he learned of a possible job opportunity in Florida. In 2013, Mother approached Father regarding a potential move to Florida. Father testified at the custody trial that he did not want Mother and Child to move to Bradenton, Florida, because he could not afford to also move, and he had no resources in that area. N.T. Custody Trial, 8/20/14, at 269-70. Father said that Fort Myers, Florida, would be a better location for him, since his parents lived there. *Id.*

On December 23, 2013, Mother simultaneously filed Protection From Abuse (PFA)[2] petitions against First Paramour and Father.[3] Mother alleged that, during a custody exchange of Child, Father became angry, slammed a door in her face, pushed her, and attacked Stepfather. A temporary order was entered pending a full hearing, which granted Mother custody of A.B. and Child and superseded the custody orders then in place. Mother also averred and testified she was relocating to Florida because of Stepfather's new job. On December 31, 2013, Mother, First Paramour, and Father appeared for hearings on Mother's PFA petitions. The presiding judge at the PFA hearings is the same judge who presided over this custody case. The judge found that Mother failed to meet her burden of proving abuse, and dismissed the petitions. In this case, the trial court found that "it appeared to the court that the petitions were merely a step in her strategy to relocate to Florida unencumbered by the children's custody rights." Trial Court Opinion, 10/27/14, ¶ 38. Since the PFA court dismissed Mother's petitions, Mother and Father have engaged in minimal communication.

Subsequent to the PFA litigation, Father has had physical custody of Child every other week. Child's attendance and performance in school has

_____

[2] Protection From Abuse Act, 23 Pa.C.S.A. §§ 6101-22.

[3] At the custody trial, Mother introduced the transcript of the PFA proceeding against Father, *[Mother v. Father]*, trial court docket No. 2013-PF-1113, as Defendant's Exhibit 41.

improved. The trial court found that Father's current home is a safe, comfortable, and nurturing environment for Child.

On March 6, 2014, Mother filed a notice of relocation and a petition to relocate to Florida with Child. In the notice, Mother listed the date of proposed relocation as April 7, 2014. Mother listed the reason for relocation as Stepfather's new employment, a job with a base salary of $65,000 plus health benefits. First Paramour consented to relocation regarding A.B. Father, however, objected to relocation regarding Child.

Mother filed her relocation petition as an emergency petition. When the parties appeared for a conference on March 12, 2014, the custody officer determined that exigent circumstances were lacking, and set the case for a regular conference. Mother instead requested that the case proceed directly to trial, which it did on August 19, 20, and 25, 2014.

Following the conclusion of testimony, the trial court orally denied Mother's petition to relocate. The trial court, however, did not provide the required evaluation of the custody and relocation factors contained in the Child Custody Act. *See* 23 Pa.C.S.A. §§ 5328(a) and 5337(h). On August 29, 2013, the trial court entered an "interim order" again denying Mother's petition to relocate, and ordered, pending a final order, the parties' 2012 custody stipulation was to continue in effect. In the interim order, the trial court stated it would issue a final order within ten days. The trial court did not do so, and instead issued its final opinion and order on October 27,

2014—63 days after the custody trial concluded. Mother then filed this appeal.

On appeal, Mother raises six issues, which we have reordered for ease of discussion:

1. Whether the trial court erred in finding that Mother had not met her burden pursuant to the factors set forth in 23 Pa.C.S.A. § 5328(a) and § 5337(h)?

2. Whether the trial court erred in denying Mother's request for an expedited hearing pursuant to 23 Pa.C.S.A. § 5337(g)?

3. Whether the trial court erred in denying Mother's motion for discovery in preparation of the custody trial in order to address 23 Pa.C.S.A. § 5328(a)(14)[, ](15)[, and](16)?

4. Whether the trial court erred in distinguishing between [full] and half siblings in considering the impact of the minor Child's separation from them?

5. Whether the trial court erred in denying Mother a fair trial on the petition for relocation given the trial court's bias, prejudice, and ill will toward Mother?

6. Whether the trial court erred in failing to timely file a final order pursuant to Pa.R.C.P. 1915.4(d) demonstrating its bias towards Mother as the court was on notice that Mother intended to appeal the denial of her request to relocate?

Mother's Brief at 9.

"We review a trial court's determination in a custody case for an abuse of discretion." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). Our scope of review "is of the broadest type." *M.O. v. J.T.R.*, 85 A.3d 1058, 1061 (Pa. Super. 2014). We defer to the trial court's credibility determinations. *S.W.D.*, 96 A.3d at 400. Furthermore:

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial

- 8 -

court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (quotation omitted). We are not bound, however, by the inferences made from the trial court's factual findings, or by findings with no support in the record. *Id.*

Under the Child Custody Act, a party seeking relocation bears the burden of proving that relocation is in the child's best interest. 23 Pa.C.S.A. § 5337(i). The best interest of the child is determined using the ten statutory relocation factors:

In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

*Id.* § 5337(h). In addition, "[i]f a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation." *Id.* § 5337(*l*).

Because relocation requires entry of a new custody order, a trial court must also consider the custody factors set forth at § 5328(a). *A.V.*, 87 A.3d at 824-25.

In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Finally, in addressing the petition to relocate, the trial court must set forth its reasoning at or near the time it issues its decision. *See A.M.S. v. M.R.C.*, 70 A.3d 830, 835 (Pa. Super. 2013) (holding that a trial court must delineate its reasoning in granting or denying relocation "at or near" the time it issues its decision); *see also C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013) (holding that 23 Pa.C.S.A. § 5323(d) requires a trial court to state its reasons prior to the appeal deadline). The trial court must state its reasons on the record or in a written opinion. 23 Pa.C.S.A. § 5323(d); *see also R.L.P. v. R.F.M.*, 2015 PA Super 29, 2015 WL 548639, 2015 Pa. Super. LEXIS 43 (filed Feb. 11, 2015) (holding that custody determination must be entered as a separate order or written opinion, rather than the transcript of a hearing).

With the above standards in mind, we turn to Mother's six issues raised on appeal.

**1. Custody and relocation factors**

Mother argues the trial court erred in weighing all sixteen[4] custody factors and all ten relocation factors. Our review of the record shows that

---

[4] An amendment added the seventeenth custody factor, § 5328(a)(2.1), effective January 1, 2014. *See* Act of Dec. 18, 2013, P.L. 1167, No. 107 § 1. The amended version of § 5328 applies in this case, because Mother filed her relocation petition after the amendment's effective date. The trial court did not consider § 5328(a)(2.1). Mother, however, did not challenge
*(Footnote Continued Next Page)*

the trial court was most concerned with two items. First, the trial court emphasized Child's need for stability in her life, *i.e.*, 23 Pa.C.S.A. §§ 5328(a)(4) and 5337(h)(2), because of her special educational and developmental needs. Second, the trial court gave weight to Mother's actions in thwarting Child's relationship with Father, *i.e.*, **id.** §§ 5328(a)(8) and 5337(h)(5) because it was concerned with what it saw as Mother's actions in seeking to relocate with Child without giving due regard to Father's custody rights.

Regarding stability, the trial court found:

The fourth statutory [custody] factor recognizes the need for stability and continuity in the child's education, family life, and community life. 23 Pa.C.S.A. § 5328(a)(4). ["]Th[e Superior C]ourt has long recognized that the removal of a young child from his environment is a factor which bears upon his emotional well being." **Hugo v. Hugo**, 4[3]0 A.2d 1183[, 1185] (Pa. Super. 1981). A disruption of an established pattern of care and emotional bonds is detrimental to a child. Unfortunately, in this case, since Mother has already disrupted any established pattern. She gave up her apartment, [and] moved to [live with] Maternal Grandmother. It is clear there has been a substantial disruption to Child's established routines and family in her life.

Of additional importance in the case *sub judice* is 23 Pa.C.S.A. § 533[7](*l*), if a party relocates with the Child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation. Although Mother relocated with Child to Florida without consent of Father and prior to entry of a court order, the prejudice or hardship Mother created, is not a presumption in favor of granting the relocation. Regrettably

*(Footnote Continued)* ———————————

the trial court's failure to do so. Accordingly, we will not consider whether the trial court erred in failing to consider § 5328(a)(2.1.).

[sic], the [c]ourt notes it was Mother's one-sided independent decision to move to Florida prior to securing a court order permitting the relocation with her minor children or consent from the fathers of her two older children. The event which Mother claims will result in trauma to the Child was set in motion by Mother's exclusive and personal choice. Although it may be difficult for Child to be separated from her Mother, the move was Mother's choice and not the [c]ourt's.

Trial Court Opinion, 10/27/14, at 12.

Regarding Mother's actions in thwarting Child's relationship with Father, the trial court found:

The seventh and eighth factors are interrelated in this case, the well-reasoned preference of the child, 23 Pa.C.S.A. § 5328(a)(7), based on the child's maturity and judgment and whether there were attempts by a parent to turn the child against the other parent[, *id.*] § 5328(a)(8). The [c]ourt heard from Child whom [sic] expressed no preference between her parents, but she is visibly distressed about the ordeal. The Child was extremely anxious, nervous, and uncomfortable during the in-camera [sic] interview. This [c]ourt determined that Mother had unreasonably involved the Child in adult matters. From the interview, this [c]ourt concluded that Mother had attempted to turn the Child against the Father, the eighth factor. Inconsistent with the bulk of her testimony, the Child accused Father of being a liar.

*Id.* at 14; *see also id.* at 19 (incorporating the above discussion into the analysis of § 5337(h)(5)). In context, the trial court was referring to Mother's filing of PFA petitions against the fathers of her two older children, Father and First Paramour. As noted above, the trial court denied both PFA petitions following a full hearing. The trial court believed Mother's actions to be part of a calculated attempt to relocate to Florida unencumbered by the custody rights of her children's fathers.

- 14 -

The trial court later explained its focus in its Pa.R.A.P. 1925(a) opinion:

> The [c]ourt's decision was based upon the best interests of the Child[,] who has a special need for stability. Mother's husband[, Stepfather] obtained a job in Florida, but the record was lacking in his attempts to obtain employment in closer proximity. Father has always been a stable and steady figure and regular part of her life. In order to maintain the stable and steady environment and relationships of the Child, it was in the best interest of the Child not to relocate. It is impossible for the Child to maintain the relationship with Father over the distance from Pennsylvania to Florida. Moreover, the most alarming concern to the [c]ourt was Mother's attempt to destroy the relationship between the Child and her Father and to turn the Child against the Father.

Trial Court Rule 1925(a) Opinion, 12/5/14, at 7 (internal citation omitted).

In response, Mother argues the trial court mis-weighed the evidence. **See, e.g.,** Mother's Brief at 34 (contending the trial court "place[d] the blame on Mother" but ignored similar evidence regarding Father). Although we acknowledge that Mother disputes the trial court's findings regarding all of the custody and relocation factors, we will not address all factors separately. None of Mother's contentions raises reversible error, because she asks us to reweigh evidence. The weighing of the evidence is the trial court's role—not this Court's. **See D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa. Super. 2014) (quoting **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa. Super. 2011)) ("[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Rather, where the record contains evidence supporting the trial court's findings regarding each factor, an appellant is not

- 15 -

entitled to relief. *See id.* at 479-80. In short, a claim that the trial court mis-weighed the custody and relocation factors does not, in itself, raise reversible error.

Mother also argues that the trial court made "numerous unsupported factual findings," Mother's Brief at 33, presumably regarding the trial court's conclusion that Mother relocated to Florida without consent of Father or permission of the custody court.[5] Mother appears to argue that she still lives in Pennsylvania with Maternal Grandmother. Mother, however, fails to acknowledge the following facts of record: (1) Mother and Stepfather vacated their leased residence in Emmaus; (2) Stepfather accepted a job in Florida; (3) Mother and Stepfather signed a lease for a residence in Bradenton, Florida; (4) Mother admitted she took Child to the Florida residence; (5) Stepfather, A.B., and N.G. live in the Bradenton residence; and (6) Mother no longer owns or leases any residence in Pennsylvania. Contrary to Mother's allegation, the record contains numerous facts supporting the trial court's conclusion that she relocated to Florida. Because the record supports the trial court's conclusion, we will not revisit that conclusion on appeal.

---

[5] Ironically, Mother claims that the trial court recognized Mother's concern with "Father's prescription drug abuse." Mother's Brief at 38. No facts of record support this allegation. To the contrary, the trial court found: "[t]here is no evidence of substance abuse." Trial Court Opinion, 10/27/14, at 15.

Mother also disputes the trial court's consideration of Mother's two PFA petitions. The trial court believed that those petitions were part of a callous attempt to facilitate relocation to Florida. We do not find error in the trial court's conclusion. Indeed, while testifying at the PFA hearing, Mother conceded that it was possible to view the PFA petitions as part of her relocation strategy:

> FATHER: . . . If I was violent or physical against her before, there hasn't been any charges or PFAs prior. And as you can see, your next Defendant[, *i.e.*, First Paramour,] is going to have the same thing as—this is a ploy to get trouble against both of us to move to Florida.
>
> THE COURT: Well, it sure looks like it's convenient.
>
> MOTHER: Right. And I understand that.

N.T. PFA Hearing, 12/31/13, at 15. We agree with Father that the trial court's consideration of Mother's PFA petitions does not reflect prejudice or bias. Rather, the trial court reached a conclusion supported by the facts of record in this case.

In sum, the record supports the trial court's findings. On appeal, Mother requests this Court to "dictate the amount of weight the trial court places on evidence." **A.V.**, 87 A.3d at 820. We reiterate that an argument that the trial court improperly weighed the evidence does not raise reversible error. Thus, we conclude the trial court did not abuse its discretion in considering and weighing the custody and relocation factors.

### 2. Failure to order an expedited hearing

Mother argues the trial court erred in not holding an expedited hearing. Under the Child Custody Act,

(1) Except as set forth in paragraph (3), the court shall hold an expedited full hearing on the proposed relocation after a timely objection has been filed and before the relocation occurs.

(2) Except as set forth in paragraph (3), the court may, on its own motion, hold an expedited full hearing on the proposed relocation before the relocation occurs.

(3) Notwithstanding paragraphs (1) and (2), if the court finds that exigent circumstances exist, the court may approve the relocation pending an expedited full hearing.

23 Pa.C.S.A. § 5337(g)(1-3).

Responding to Mother's contention, the trial court noted that it scheduled the matter as expeditiously as possible. Trial Court Rule 1925(a) Opinion, 12/5/14, at 2-3. The trial court noted further that Mother was given the opportunity to demonstrate exigent circumstances, but failed to do so. *Id.* The trial court also made efforts to schedule the custody trial before the start of the 2014-15 school year for the benefit of Child.

Mother filed her petition on March 6, 2014, and the hearing on relocation began on August 19, 2014, or 166 days later. This timeline complies with Pa.R.C.P. 1915.4(a)-(c), which requires (1) the scheduling of trial within 180 days of the filing of a petition; and (2) the commencement of trial within 90 days of the date of scheduling.

The trial court did not err in refusing to find exigent circumstances. Mother filed her petition to relocate only 32 days before the proposed move

- 18 -

date.[6]  Yet, she knew of the potential move to Florida at least as early as the December 2013 PFA proceedings.  The Custody Act provides:

> (2) Notice, sent by certified mail, return receipt requested, shall be given no later than:
>
>> (i) the 60th day before the date of the proposed relocation; or
>>
>> (ii) the tenth day after the date that the individual knows of the relocation, if:
>>
>>> (A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60-day notice; and
>>>
>>> (B) it is not reasonably possible to delay the date of relocation so as to comply with the 60-day notice.

23 Pa.C.S.A. § 5337(c)(2).  Mother's relocation petition did not plead facts triggering the emergency notice provisions of § 5337(c)(2)(ii).  The record shows Mother had been seeking to move since at least December 2013—four months before filing her petition.  It is disingenuous for Mother to complain about the allegedly plodding course of litigation when she waited until March 6, 2014 to file an untimely relocation petition, and then moved to Florida prior to the entry of an appropriate order.  To the extent Mother and Stepfather believed that Father consented to the relocation, nothing

---

[6] The trial court was unsure of the significance of the proposed relocation date, noting that Stepfather did not move to Florida until the end of the 2013-14 school year, and Mother remained in Pennsylvania, living with Maternal Grandmother until the end of August 2014, *i.e.*, when her relocation petition was denied.  Trial Court Rule 1925(a) Opinion, 12/5/14, at 2 n.2.

prevented her from filing a notice of proposed relocation sooner. Given these facts, it is understandable why the trial court felt "backed into a corner" by Mother's actions. N.T. Custody Trial, 8/25/14, at 485. Finally, Mother has not suggested a viable remedy for any delay. *Cf. Plowman v. Plowman*, 597 A.2d 701, 709 (Pa. Super. 1991) (holding trial court erred in delaying one year until holding post-relocation hearing, but nevertheless affirming the order allowing relocation). In sum, Mother is not entitled to relief.

## 3. Denial of motion for discovery

Mother argues the trial court erred in refusing her request to allow discovery of Father's medical records and other information. Mother contends the records were necessary to establish her allegation that Father abused narcotics that were prescribed to him. In her motion, Mother requested discovery of the following items:

- A complete list of all medications Father was taking when he applied to terminate his child support order because of his disability;

- A release of his medical records;

- A copy of Father's Social Security application;

- A copy of any and all benefits Father received from Lehigh County or the Pennsylvania Department of Welfare;

- A copy of Father's phone records from January 2013 through the date of the motion;

- A copy of all text messages Father sent relevant to Child's doctor's appointments, the KKI evaluation, and school functions;

- A copy of all text messages verifying Father's notification of dates that Child attended doctor's appointments or was sick and absent from school;

- A copy of Father's pain management records;

- A copy from Father's pharmacy of all medications he was prescribed and whether he filled those prescriptions; and

- A copy of the lease for Father's apartment in Allentown.

Mother's Motion for Discovery, 5/21/14, ¶ 7.

In custody cases, "[t]here shall be no discovery unless authorized by special order of court." Pa.R.C.P. No. 1915.5(c); *see also* Pa.R.C.P. No. 1930.5(a) ("There shall be no discovery in a simple support, custody or [PFA] proceeding unless authorized by order of court."). Because Rules 1915.5 and 1930.5 grant the trial court authority to grant or deny the ability to conduct discovery, we review the trial court's decision for an abuse of discretion.

The trial court held a hearing on Mother's discovery motion. At the hearing, the trial court expressed concern with the breadth of Mother's request, and noted that she could cross-examine Father at trial regarding his disability and any medications prescribed to him. The trial court criticized Mother's discovery request as overbroad, specious, and a fishing expedition, and noted she requested items covered by Father's un-waived doctor-patient privilege. Trial Court Rule 1925(a) Opinion, 12/5/14, at 4.

We have reviewed the record, and we find no abuse of discretion in denying Mother's request to conduct discovery. Much of the information Mother sought is covered by Father's doctor-patient privilege, *see* 42

Pa.C.S.A. § 5929, which he has not waived. Therefore, the trial court was required to balance Mother's need for the information against Father's privacy interest in his medical records. *See M.L. v. L.L.*, 55 A.3d 1167, 1171-73 (Pa. Super. 2012). Mother has not provided a reason why the proposed discovery was necessary, other than to state generally that the information sought was relevant. She has not explained why her need for that information outweighed Father's privacy interest in his medical records. *Cf. id.* The record supports the trial court's determination that Mother's discovery request was an overly broad fishing expedition. For the foregoing reasons, Mother is not entitled to relief.

### 4. Distinguishing between half-siblings and full siblings

Mother argues the trial court erred in distinguishing between full- and half-siblings.[7] In support, Mother quotes the following passage from the trial court's opinion:

> The [c]ourt notes that Child has no [full] siblings, but half siblings, as all the children have different fathers.

Trial Court Opinion, 10/27/14, at 13.

Pennsylvania has a policy that siblings should be raised together. *See Johns v. Cioci*, 865 A.2d 931, 942 (Pa. Super. 2004); *see also* 23

---

[7] Both the trial court and the parties use the term "biological sibling" to refer to siblings who have the same mother and father. However, half-siblings are nevertheless biologically related through their one shared parent. To avoid confusion, we will use the term full-sibling to refer to children who share both parents, and half-siblings for children who share only one parent.

Pa.C.S.A. § 5328(a) (requiring a court to consider "[t]he child's sibling relationships" when ordering a form of custody); *id.* § 5337(h)(1) (requiring a court to consider a child's sibling relationships when addressing a relocation petition). This policy does not distinguish between full- and half-siblings. *See Davis v. Davis*, 465 A.2d 614, 621 (Pa. 1983) (plurality opinion); *Johns*, 865 A.2d at 942.

Here, the trial court made no distinction between full- and half-siblings. In arguing to the contrary, Mother quotes the trial court out of context. In context, the passage is as follows:

> The sixth factor is the child's sibling relationships. 23 Pa.C.S.A. § 5328(a)(6). The policy in Pennsylvania is to permit siblings to be raised together, whenever possible. Absent compelling reasons to separate siblings, they should be reared in the same household. **All indications are that the three half-siblings (Mother's oldest from a prior relationship, [A.B.], and baby sister from Mother's current relationship, [N.G.]) interact very well with Child and that these children have a strong bond. The desire of the court is to keep the siblings in close proximity to each other so that they can grow up together.** The [c]ourt notes that Child has no [full-]siblings, but half-siblings, as all the children have different fathers. The policy that siblings should be raised together is a consideration in, rather than a determinant of, custody arrangements. Again, Mother's unilateral actions[, *i.e.*, in relocating to Florida prior to entry of a custody order,] created the separation of the half-siblings, to the detriment of Child.

Trial Court Opinion, 10/27/14, at 13 (internal quotations and alterations to quotations omitted) (other internal citations omitted) (emphasis added). The trial court later explained:

> The policy against separation of siblings is only one factor—and not a controlling factor—in the ultimate custody decision. The

policy in Pennsylvania is to permit siblings to be raised together, whenever possible. Absent compelling reasons to separate siblings, they should be reared in the same household to permit the continuity and stability necessary for a young child's development. This policy does not distinguish between half-siblings and siblings who share both biological parents. However, it is only one factor for the court to consider.

Trial Court Rule 1925(a) Opinion, 12/5/14, at 7-8 (internal quotations and citations omitted).

The record does not support Mother's allegation. Rather, it shows the trial court (1) did not denigrate Child's sibling relationships merely because her siblings have different fathers; and (2) properly considered Child's sibling relationships as one factor among many in addressing custody and relocation. Mother takes the trial court's neutral statement of fact out of context, and she fails to acknowledge other portions of the record where the trial court noted its desire to keep together Child and her siblings, if possible. *See id.*; N.T. Custody Trial, 8/25/14, at 487 ("But meanwhile we've got a sweet, little girl who is now separated from her siblings. And when parents live apart, I look at siblings as being front and foremost.").

The trial court's analysis was not an abuse of discretion, as Pennsylvania's policy of raising siblings together is not outcome-determinative in a relocation case. *See Johns*, 865 A.2d at 942 ("[T]his Court has made clear that the policy against separation of siblings is only one factor-and not a controlling factor-in the ultimate custody decision."). This issue is, therefore, without merit.

## 5. Bias, ill will, prejudice

Mother argues she was denied a fair hearing, because the trial court was biased against her. Mother argues the trial court's bias flowed from several factors, including (1) its inferences regarding the PFA petition Mother filed against Father; and (2) its "sarcastic, irritated, and annoyed" criticism of Mother while she testified, as opposed to its friendly treatment of Father.

An abuse of discretion occurs when a trial court bases its decision on "partiality, prejudice, bias, or ill will, as shown by the **evidence of record**." ***K.B. II v. C.B.F.***, 833 A.2d 767, 770 (Pa. Super. 2003) (emphasis added).

We have reviewed the record, and find that any "sarcastic, irritated, and annoyed" criticism of Mother is not apparent from the record. It is incumbent on the party seeking to challenge allegations of bias by the trial judge to create a record supporting that allegation that an appellate court can review. ***Cf. In re A.D.***, 93 A.3d 888, 892 (Pa. Super. 2014) ("In order to prevail, Father, as the party seeking recusal, must satisfy the burden 'to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.'"). Here, Mother never filed a recusal motion, and the record does not support her allegations of bias and prejudice.[8]

_____

[8] Moreover, even if Mother had filed a motion to recuse, her citation of isolated portions of the trial court record would not raise a reversible error. Relatedly, as we have stated in regards to criminal cases:

*(Footnote Continued Next Page)*

In sum, the record does not support Mother's allegation that the trial court based its decision on bias, ill-will, or prejudice toward Mother. Rather, the record shows the trial court properly based its decision on the evidence of record using the legal principles enunciated in the Child Custody Act.

## 6. Trial court's failure to issue a timely opinion

In her final issue, Mother claims the trial court erred in not timely issuing an opinion following the hearing on her petition to relocate under Pa.R.C.P. No. 1915.4(d). Rule 1915.4(d) provides:

> The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

*(Footnote Continued)* ─────────────

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible . . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Commonwealth v. Kearney*, 92 A.3d 51, 61 (Pa. Super. 2014) (emphases omitted) (quoting *Liteky v. United States*, 510 U.S. 540, 555-56 (1994)).

Pa.R.C.P. No. 1915.14(d).

Here, the custody trial concluded on August 25, 2014. The trial court thereafter entered an "interim order" that denied Mother's relocation petition and stated that a final order would issue in ten days. The trial court, however, did not issue a final opinion and order until October 27, 2014— over two months after the conclusion of the custody trial. The trial court later acknowledged that it did not comply with Rule 1915.4(d).

Despite the trial court's failure to comply with Rule 1915.4(d), we find Mother is not entitled to relief. Mother suggests we reverse, but has cited no authority supporting her argument. More important, she has not demonstrated any prejudice suffered because of any delay. Nor does it appear that any prejudice occurred, Mother having moved to Florida with Stepfather and her other two children. Accordingly, reversing the trial court's denial of Mother's relocation petition solely because of any delay is unwarranted.[9]

---

[9] We expressly disapprove of the trial court's actions in denying Mother's relocation petition from the bench but not stating its reasons for the denial until two months later. First, that period exceeds the time allowed by Rule 1915.4(d). Second, this Court has repeatedly stated that a court making a decision in a custody or relocation case must explain its decision at or near the time of its ruling. "Consistent with our holdings in *C.B.* and *M.P.*[ *v. M.P.*, 54 A.3d 950 (Pa. Super. 2012)]*, we conclude here that sections 5323(d) and 5328 require the trial court to set forth its *ratio decidendi* **at or near the time it issues its decision** in a custody proceeding." *A.M.S.*, 70 A.3d at 835 (emphasis added).

We have thoroughly reviewed the record, and we hold that the trial court did not abuse its discretion in denying Mother's petition to relocate to Florida with Child.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2015