J-A09012-19

2019 PA Super 210

| C.H.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| W.D.L., | : | |
| | : | |
| Appellant. | : | No. 2617 EDA 2018 |

Appeal from the Order Entered, July 30, 2018,
in the Court of Common Pleas of Monroe County,
Civil Division at No(s):  580 DR 2016 and 5626 CV 2018.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

OPINION BY KUNSELMAN, J.:                    **FILED JULY 08, 2019**

W.D.L. (Husband) appeals from an order issued pursuant to the Protection From Abuse (PFA) Act, 23 Pa.C.S.A. §§ 6101-6122.  The PFA order provided C.H.L. (Wife), *inter alia*, exclusive possession of the marital residence and awarded her temporary sole custody of the parties' four-year-old daughter; the child was not named as a protected party in the order.  After careful review, we affirm.

In a meticulous, 42-page Rule 1925(a) opinion, the trial court detailed the "very calculated, complex, web of domestic violence, control and intimidation by Husband against Wife."  **See** T.C.O., 11/16/18, at 1.  Those facts, crucial to our understanding the court's decision, are ultimately not essential to the disposition of Husband's appeal.  Briefly, the overture is this:

The parties wed after just three weeks of dating when Husband was 46 and Wife was 20.  Their five-year marriage produced a four-year-old daughter

_____

*   Retired Senior Judge assigned to the Superior Court.

and extensive litigation, replete with protective orders, contempt violations and criminal charges. Not until the instant PFA hearing, however, did the court recognize Husband's "manipulation of all facets of the criminal justice and court system in order to achieve power and control over Wife." *See id.* at 30. The court stated that Husband "was playing the system like a Stradivarius." *See* N.T., 7/30/18, at 42. Although Husband tried to persuade the court that Wife suffered from various mental illnesses, the court ultimately concluded that Wife's erratic behavior was attributable to years of domestic violence.

At the PFA hearing, Wife testified to Husband's extensive abuse and produced photographic evidence of the same. The court further determined that Husband used custody of the parties' child as a "weapon against Wife." *See* T.C.O. at 41. The court issued a two-year PFA order, which included provisions awarding Wife exclusive possession of the marital residence and temporary sole custody of the child pending a custody conference scheduled for seven weeks later.

Husband filed this timely appeal and presents five issues for our review:

1. Did the trial court err and/or abuse its discretion in granting Wife's protection from abuse petition when the award was against the weight of the evidence presented and against the credibility of Wife based on evidence during the hearing?

2. Did the trial court err and/or abuse its discretion in not allowing Husband to present certain evidence which would have shown that Husband was not abusive toward Wife and would have shown the nature

of the parties' relationship, such as text messages and letters?

3. Did the trial court err and/or abuse its discretion in not allowing Husband to present evidence which showed he had the right to occupy the subject property pursuant to a divorce settlement agreement, and where Husband had not welcomed Wife to the subject property and asked Wife to leave the subject property?

4. Did the trial court err and/or abuse its discretion in evicting Wife from the subject property when the parties had executed a divorce settlement agreement, which stated appellant would have exclusive possession of the subject property?

5. Did the trial court err and/or abuse its discretion in awarding temporary primary custody to Wife when Wife testified Husband had not physically harmed the child nor threatened the child, and Wife testified that Husband was a good father, and was precluded from presenting the current custody order where he had sole physical custody?

*See* Husband's Brief at 9-10.

Our standard of review for PFA orders is well-settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citations omitted).

Husband's first claim seemingly challenges the weight of the evidence presented at the PFA hearing. Throughout his brief, however, Husband conflates the weight of evidence with the sufficiency of evidence. ***See*** Husband's Brief at 42. The combination of Husband's departure from the

actual issue presented, and the fact that he cites no relevant authority makes it difficult to discern the substantive nature of his claim.

Whatever its foundation, we conclude Husband's first issue is waived. It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal. *See* Pa.R.A.P. 2119(b); *Eichman v. McKenon*, 824 A.2d 305, 3019 (Pa. Super. 2003). Here, Husband cites no relevant legal authority to discuss either the weight or the sufficiency of the evidence; one cited case addresses a court's appearance of impropriety and the other is a decades-old precedent concerning the absence of due process at a zoning hearing. *See* Husband's Brief at 30. Husband merely attempts to re-litigate the facts and the PFA court's credibility findings. *See* Husband's Brief at 30-42.

To that end, we observe that the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder. *See Mescanti v. Mescanti*, 956 A.2d 1017, 1020 (Pa. Super. 2008). In reviewing the validity of a PFA order, this Court must view the evidence in the light most favorable to petitioner and granting her the benefit of all reasonable inferences. *See S.W. v. S.F.*, 196 A.3d 224, 228 (Pa. Super. 2018) (citation omitted). And we must defer to the lower court's determination of the credibility of witnesses at the hearing. *Id.* Thus, even if Husband had preserved his first issue, we would still find his claim to be meritless.

Turning to his second claim, Husband argues that the PFA court erroneously prevented him from presenting relevant evidence, such as text messages and letters. Again, our review is hindered by deficiencies in Husband's brief.

This portion of Husband's argument section is a mere 200 words.[1] *See* Husband's Brief at 43-44. Although he cites legal precedent, a rule of evidence, and the transcript, he does not actually identify the evidence he sought to introduce, nor the court's alleged exclusion of the evidence, nor his objection to the court's ruling. *Id*. An exchange during his direct examination is the only identified portion of the record where Husband claims the court erroneously limited the admission of his evidence:

> ATTORNEY: So [Wife] is [at the marital residence] as of now?
>
> HUSBAND: She is not. She left on the 21st of this month after being requested to, after about two months' worth of requests --
>
> THE COURT: Alright, I'm going to stop you there, [Husband], so you're just going to answer the question and not editorialize, otherwise we're never going to get through this.

N.T., 7/30/18, at 3-4.

Notably, neither Husband nor his attorney took issue with the trial court's procedure:

---

[1] We observe, however, that Husband did not include a certificate of compliance ensuring that the brief, which totaled 55 pages, was less than 14,000 words. *See* Pa.R.A.P. 2135(a).

ATTORNEY: Fair enough.

HUSBAND: Yes, ma'am.

*Id.* at 4.

Compounding our confusion, we note that the trial court explained that the only evidentiary rulings it made were actually in Husband's favor:

> At no time during the final PFA hearing did Wife raise an objection to any evidence presented by Husband during his case in chief. Nor did the Court sustain any objection or preclude Husband from presenting evidence of any kind. In fact, the only objections raised during the proceeding were by Husband's counsel seeking to preclude evidence or testimony Wife sought to admit, which [the court] sustained.

*See* Trial Court Opinion, 11/16/18 at 36-37.

For several reasons, we must again find waiver. For one thing, issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). If Husband had other contentions during the hearing, he did not properly raise them. In terms of his appellate brief, we observe that "[i]f reference is made to pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). If Husband had other contentions he meant to address in his brief, he did not properly reference them.

It is not the duty of this Court to act as appellant's counsel, and we decline to do so. *See Hayward v. Hayward*, 868 A.2d 554, 558 (Pa. Super.

2005). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." ***Commonwealth v. Connavo***, 199 A.3d 1282, 1289 (Pa. Super. 2018) (citations omitted). When an allegation is unsupported by any citation to the record, such that this Court is prevented from assessing the issue and determining whether error exists, the allegation is waived for purposes of appeal. ***Commonwealth v. Williams***, 176 A.3d 298, 306 (Pa. Super. 2017) (citations omitted)*.* This Court cannot conduct a meaningful review if it has to guess what issues an appellant is appealing. ***See Jones v. Jones***, 878 A.2d 86, 89 (Pa. Super. 2005) (finding waiver when this Court could not discern appellant's issues on appeal) (citation omitted). We conclude that Husband's second issue is also waived.

We discuss Husband's third and fourth issues contemporaneously, as both concern the court's award of exclusive possession of the marital residence to Wife. First, Husband contends that Wife was not entitled to receive exclusive possession of the marital residence, because Wife had previously executed a marriage settlement agreement wherein she had granted possession to Husband.[2] Second, Husband contends that Wife was

---

[2] We note that at the time of the PFA hearing, the parties were not divorced. Wife has since averred that the settlement agreement is void and unenforceable on the grounds of incapacity and intentional fraud. In other words, this is not a case where, long after the divorce decree and equitable distribution, a PFA court awarded one ex-spouse possession of other's property.

- 7 -

not entitled to this relief, because she did not explicitly request it in her PFA petition.

Husband argues that the court did not allow him to present the settlement agreement showing he had a right to exclude Wife from the subject property. **See** Husband's Brief at 45. Like his previous evidentiary challenge, Husband's recitation of what transpired at the hearing is just not true. Husband cannot cite to where he attempted to present such evidence but was rebuffed by the court. **See also** T.C.O., at 36-37 (excerpt quoted above).

More to the point, Husband is simply incorrect that the court lacked authority to award the marital residence to Wife because she does not hold title to it. The Protection From Abuse Act specifically allows the court to grant a plaintiff exclusive possession of the residence even though the defendant is the sole owner if the defendant has a duty to support the plaintiff or minor children living in the residence. **See** 23 Pa.C.S.A. § 6108(a)(3).

In the alternative, Husband argues that the court could not award exclusive possession, because Wife did not expressly request such relief in her PFA petition. **See** Husband's Brief at 48. He analogizes the instant case to when a court issues a PFA order on behalf of a party who did not properly petition for one, a situation clearly forbidden by Section 6108(c) (concerning mutual orders of protection).

His argument is novel, but we need not decide whether the court is confined to only those forms of relief requested in the petition, or whether the court has the broad discretion to award **any** form of relief under Section 6108.

We conclude that the relief Wife requested in her PFA petition authorized the court to award exclusive possession under Section 6108(a)(3).

Wife's PFA petition was a standardized document where she, as the petitioner, filled in blanks and checked off boxes. Such is a typical practice across the Commonwealth and often completed with the help of volunteers. Husband is technically correct; Wife did not check off the box that stated: "Plaintiff is asking the court to evict and exclude the Defendant from the following residence: _____." *See* Wife's Petition for Protection From Abuse at 4. Likewise, Wife did not check off the box, which prayed upon the court to: "Grant such other relief as Plaintiff requests and/or the court deems appropriate." *Id.*

However, Wife did check the box that requested the court to: "Require Defendant to provide Plaintiff and/or minor child/ren with other suitable housing." *Id.* Wife also articulated that she lost "money, car, home" on account of Husband's abuse. *Id.* Consequently, Husband was on notice at the PFA hearing that he would be responsible for providing suitable housing for Wife and their child if Wife succeeded on her petition.

Given his responsibility to the parties' child, the court may have determined it was best for the child to remain at the same address while custody switched from Husband to Wife by virtue of the PFA order. But we need not speculate, because Wife clearly requested that Husband provide her and their child with suitable housing. The PFA Act authorizes the court to provide such relief. The court observed that Husband had the financial ability

to comply. Consequently, the court did not abuse its discretion when it determined that exclusive possession of the marital residence was an appropriate mechanism to facilitate this relief. Husband's third and fourth issues are also without merit.

We turn now to Husband's final contention that the court erred by awarding Wife temporary custody of their four-year-old daughter. *See* Husband's Brief at 51. Before we address the merits of Husband's challenge, we consider whether the PFA order's temporary custody provision is moot.

The PFA order, dated July 30, 2018, awarded Wife temporary sole legal and physical custody of the child, and directed the parties to attend a custody conference before a conciliator on September 12, 2018. The parties appeared for the conference, and the conciliator took the matter under advisement. Before a decision was issued, Husband filed a PFA petition against Wife on behalf of the child and provided the court a photo of a welt on the child's body. The court granted Husband a temporary PFA order, and the child was placed in his custody. A final PFA hearing was delayed until late October 2018 while the local Children and Youth Services investigated.[3] Following the investigation, the court held a final PFA hearing and denied Husband's petition. Custody then reverted back to Wife, pursuant the temporary custody provision of the July 30, 2018 PFA order.

_____

[3] The results of the CYS investigation are not in the record, but the trial court noted that CYS did not commence a dependency action. *See* T.C.O. at 22.

- 10 -

On November 1, 2018, the custody conciliator's report indicated that the parties were unable to reach an agreement. The court scheduled a preliminary hearing for November 19, 2018, appointed the child a guardian *ad litem*, ordered a comprehensive custody evaluation, and established an interim custody order. There, our knowledge of the custody case ends with the trial court's issuance of its Pa.R.A.P. 1925(a) opinion on November 16, 2018.

There is no question the court intended for the PFA order's custody provisions to apply only on an emergency, temporary basis until the parties met at the custody conference. Because the Interim Custody Order (dated November 1, 2018) almost certainly superseded the temporary custody provisions of the PFA Order (dated July 30, 2018), it appears that the issue Husband presents in this appeal regarding the PFA Order's custody provision is moot.[4]

This Court has held that "we may *sua sponte* raise the issue of mootness, as we generally cannot decide moot or abstract questions, nor can we enter a judgment or decree to which effect cannot be given." **E.B. v. D.B.**, --- A.3d ---, 2019 PA Super 146, at *7, (Pa. Super. May 6, 2019) (citing **In re L.Z.**, 91 A.3d 208, 212 (Pa. Super. 2014) (*en banc)*, *rev'd on other grounds*, 111 A.3d 1164 (Pa. 2015) (quotations omitted).

Despite our general rule regarding mootness,

---

[4] By now there should exist a final custody order, which presumably subsumes both the Interim Custody Order and the temporary custody provision of the PFA Order.

this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*Id.* (quoting *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002)).

In *E.B. v. D.B.*, we reviewed the merits of an interim order that modified a pre-existing custody arrangement pending a final hearing.  The interim order was reviewable because otherwise the interim order would likely have evaded our review due to its interlocutory nature.  *Id.; see also Plowman v. Plowman*, 597 A.2d 701 (1991) (reviewing an interlocutory order permitting a mother to relocate with her child despite the existence of a later order entered after a full custody hearing).

Here, because the instant PFA order affected the non-custodial parent's right to "access to the child and impacted the *status quo* that would later set the stage for the full custody trial, we conclude that we ought to review the proper procedures for entry" of temporary custody provisions in a PFA order. *See id.*  As in *E.B.*, we are satisfied that the question presented concerning the PFA's temporary custody provision is "capable of repetition and apt to elude appellate review." *See id.* at *8.  As in *E.B.*, "the history of this case suggests that these parties are likely to litigate continually aspects of their custody arrangement, and the trial court might again try to resolve their issues without conducting a full trial." *See id.*  Although the trial court fashioned a sole custody provision on a temporary basis, that provision was the operating

- 12 -

custody arrangement for at least three months. We may proceed to the merits of Husband's final contention.

Husband asserts that the court erred when it did not consider the child's best interests when displacing the prior custody order and awarding Wife temporary custody out of the PFA order.

To discern whether the court erred, we must examine the connection between the Protection From Abuse Act (23 Pa.C.S.A. §§ 6101-6122) and the current iteration of the Child Custody Act (23 Pa.C.S.A. §§ 5321 – 5340), both of which are chapters under the Domestic Relations Code. When considering issues of statutory interpretation, the applicable standard of review is *de novo* and our scope of review is plenary. **Trout v. Strube**, 97 A.3d 387, 389 (Pa. Super. 2014).

Believing the facts to be similar, Husband relies exclusively on **Shandra v. Williams**, 819 A.2d 87 (Pa. Super. 2003), wherein we concluded that the trial court had improperly modified a child custody order following a PFA hearing without first providing the parties an opportunity to introduce evidence relating to the best interests of the child. **Shandra**, 819 A.2d at 88. Husband's reliance is misplaced.

In **Shandra**, although the custody portion of the PFA order was entered ostensibly under the auspices of section 6108(a)(4) (relating to temporary custody), the trial court effectively entered a **final** custody order. There, the court permanently suspended all of the father's custodial rights until he achieved a certain condition, namely the release from his halfway house. **Id.**

at 90-91. We reiterated that the right of the PFA court to award temporary custody was intended to provide ancillary relief regarding children in abuse actions, but not to establish a procedure for determining permanent custody. *Id.* at 91. (Citation omitted). Because the **Shandra** PFA court effectively issued a final custody award, it erred by not abiding by the proper custody procedure, including notice and an opportunity to be heard on substantive custody considerations, *i.e.* the child's "best interests" as defined by statute.

In **Shandra**, we quoted the pertinent custody statute nearly verbatim when we stated: "[I]t is well-settled, that in any instance in which child custody is determined, the overriding concern of the court must be the best interest[s] and welfare of the child, ***including the child's physical, intellectual, emotional and spiritual well-being***." ***See id.*** (Emphasis added); ***see also*** 23 Pa.C.S.A. § 5301(a).

In the years since **Shandra**, sections 5301- 5315 of the Child Custody Act have been repealed and replaced. The new iteration of the Child Custody Act requires a 16-factor, best interests analysis when awarding any form of custody. ***See*** 23 Pa.C.S.A. § 5328(a).

In other words, we could not apply the **Shandra** best interests rule in any event, as it was based on a statute now defunct. What Husband essentially argues then, is that the court erred by not conducting a best interests analysis under Section 5328(a) of the current Child Custody Act.

Absent guidance from our Legislature or our Supreme Court, we conclude that a PFA court need not conduct a best interests custody analysis

to award **temporary** custody as form of relief under section 6108 of the Protection From Abuse Act.

The purpose of the Protection From Abuse Act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring. **Ferko-Fox v. Fox**, 68 A.3d 917, 921 (Pa. Super. 2013)(citation omitted). It is well-settled that trial courts have the authority to enter protection from abuse orders that conflict with custody orders. **See Lawrence v. Bordner**, 907 A.2d 1109, 1113 (Pa. Super. 2006) (citing **Dye for McCoy v. McCoy**, 621 A.2d 144, 145 (Pa. Super. 1993)). The PFA Act allows the court to award temporary custody or establish temporary visitation rights with regard to minor children. **See** 23 Pa.C.S.A. § 6108(a)(4). Where the court finds after a hearing that the defendant has inflicted serious abuse, the court may deny the defendant custodial access to a child. **See** 23 Pa.C.S.A. § 6108(a)(4)(iii). In order to prevent further abuse during periods of access to the plaintiff and child during the exercise of custodial rights, the court shall consider, and may impose on a pre-existing custody award, conditions necessary to assure the safety of the plaintiff and minor children from abuse. **See** 23 Pa.C.S.A. § 6108(a)(4)(vi).

Custody wise, a PFA order is not designed to impose anything but emergency relief. **See Dye for McCoy**, **supra**, 621 A.2d at 145. To understand this, look no further than the PFA Act: "Nothing in this paragraph [relating to temporary custody as a form of relief] shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under

- 15 -

the Pennsylvania Rules of Civil Procedure." *See* § 6108(a)(4)(v). But while the domestic violence emergency is still pending, a PFA order may alter a pre-existing custody order and remand for clarification to avoid conflict. *See Dye for McCoy*, 621 A.2d at 145. "To hold otherwise would have the effect of emasculating the central and extraordinary feature of the PFA which is to prospectively control and prevent domestic violence." *Id.*

Moreover, the PFA Act does not require a child to be physically struck before a court can award temporary sole custody to a plaintiff. The court may do so even though the defendant has inflicted serious abuse upon the plaintiff alone. *See* § 6108(a)(4)(iii)(B).

There is good reason for this. For one, research indicates that children who are exposed to domestic violence suffer a torrent of adverse effects regardless of whether they are direct victims of the physical abuse. *See, e.g.,* Rosie Gonzalez & Janice Corbin, *The Cycle of Violence: Domestic Violence and Its Effects on Children*, 13 SCHOLAR 405, 413 (2011). Even simple exposure to such violence produces physical and mental results similar to those observed in maltreated children. *See id.* (Footnotes omitted).[5] The PFA

---

[5] We observe the research's non-exhaustive litany that might befall exposed children:

> Children living in violent homes suffer both immediate and long-term effects such as trauma-related symptoms, depression, low self-esteem, and aggression. They are also likely to suffer from unhealthy sleeping and eating habits as infants, exhibit aggressive and regressive behavior in

Act also guards against defendants who use children as tools against those seeking protection, even if the children are not themselves physically abused. In the instant case, the court found exactly that.

Wife testified she always "positioned" herself away from the child when Husband beat her so the child would not see the abuse. *See* N.T., 7/30/18,

_____

school, and behave delinquently as teenagers. The psychological impact on children living in violent homes can manifest itself as post-traumatic stress disorder (PTSD) or other psychiatric disorders, including dissociative disorders, anxiety, and mood disorders. These children also have a tendency to exhibit suicidal ideation, increased levels of fear, unnatural passivity and dependency, as well as impulsivity and extreme crying. Younger children generally suffer from poor health, insomnia, excessive screaming, frequent headaches, stomachaches, diarrhea, asthma, and peptic ulcers. Accordingly, children exposed to family violence are admitted to hospitals twice as often as other children, have an increased number of psychosomatic complaints, and are more frequently absent from school due to health problems. Furthermore, victims of abuse frequently turn to drug and alcohol abuse in order to cope with traumatic childhood events, which in turn can lead to the development of fatal diseases such as heart disease, lung cancer, and liver disease.

*      *      *

In addition to the increased risk for future violent victimization, children exposed to domestic violence are also more likely to become perpetrators of violence against others.

*Id.* at 413-415, 418 (footnotes and quotations omitted).

at 27. Wife further testified that Husband is not a physical danger to the child, but she stated:

> I believe mentally it's not healthy for [the child], because [Husband] tells [the child] 'mommy's going away for a long time' and 'you're going to get a new mommy,' and [the child] repeats 'I don't want a new mommy, I love my mommy' and yeah, he like tells, just tells her that. So he's not, no, he's not physically abusive to [the child] but he tells her stuff that you should not tell a four-year-old.

***Id.***, at 30.

The court classified these types of statements as destructive and concluded that Husband has utilized custody of the parties' small child "as a weapon against Wife." ***See*** T.C.O. at 41.

Contrary to Husband's assertion, the PFA court actually concluded that temporary custody was in the child's best interests. ***Id.*** at 43. Indeed, some of the court's considerations appear to correspond with a formal custody analysis.[6] Nevertheless, when awarding temporary custody out of a PFA order, the court need only consider the risk the defendant poses to the child as well as the plaintiff. ***See*** 23 Pa.C.S.A. § 6108(a)(4).

We cannot ignore the sheer impracticality of Husband's suggestion, that a court conduct a full-blown custody hearing as part of a final PFA hearing. With an eye toward judicial economy, we observe that the dichotomy between

---

[6] The Child Custody Act mandates that a court consider both the abuse one parent suffers at the hands of the other, as well as the attempts of the parent to turn the child against the other. ***See*** 23 Pa.C.S.A. § 5328(a)(2),(8). A court must also give weighted consideration to those factors affecting the safety of the child. ***Id.***

a PFA order's temporary custody provision and a final custody order is akin to a jurisdictional challenge under the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. §§ 5401 *et seq.* There, a court must first hold a hearing to determine whether it even has jurisdiction to award custody; the court leaves for another day entirely the substantive custody considerations. But even then, a court exercising temporary emergency jurisdiction may award interim custody relief. "A court of this Commonwealth has temporary emergency jurisdiction if [*inter alia*] it is necessary in an emergency to protect the child because the child or sibling **or parent of the child** is subjected to or threatened with mistreatment or abuse." § 5324(a) (emphasis added). The risk of abuse to the parent alone is enough to authorize the court to protect the child.

Similarly, a temporary custody provision in a PFA order is just like any other interim custody order. Section 5323(b) of the Child Custody Act makes clear that **interim** custody orders are not the types of custody awards necessitating a 16-factor, best interests analysis under Section 5328(a). Often, it will be reasonable and necessary for the trial court to institute a temporary arrangement as a stopgap during litigation. **See E.B.,** 2019 PA Super 146, at *10. It is well-settled that trial court has authority to award custody on a temporary basis so that it may address emergency situations and protect a child until a final custody hearing can be held, when a permanent order can be entered. **See S.W.D. v. S.A.R.**, 96 A.3d 396, 405 (Pa. Super. 2014) (citing Pa.R.C.P. No. 1915.13 ("Special Relief"); **see also** 23 Pa.C.S.A.

§ 5323(b) (allowing interim award of custody in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief).

The object of all statutory interpretation and construction is to ascertain and effectuate the intention of the General Assembly. *See* 1 PA.C.S.A. § 1921(a). We must presume that our Legislature did not intend any statutory language to exist as mere surplusage. *See, e.g., C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013). With those principles in mind, we conclude there is no conflict between the PFA Act's relief of temporary custody and the Child Custody Act's mandate that a court conduct a best interests analysis when awarding any form of custody. *See* 23 Pa.C.S.A. § 6108(a); *see also* 23 Pa.C.S.A. § 5323(b). The best interests mandate only applies to final custody awards, not temporary solutions to emergencies.

We recognize the apprehension that some could exploit the PFA Act, *i.e.* that dishonest parents might utilize a protection order as a vehicle to bypass the Child Custody Act and obtain a backdoor custody modification. The Domestic Relations Code accounts for the potential exploitation by separating the custody issue into two inquiries: first, a PFA court addresses the exigent risk of abuse posed to the child as well as the petitioner; thereafter, the custody court determines the child's best interests. This procedure safeguards the rights the both parties in their dual roles as PFA litigants and as parents.[7] Still, as we cautioned in *E.B.*, *supra*, courts should be wary of prolonged

---

[7] In larger counties where the courts have been able to adopt a "one family, one judge" policy, this process is all the more seamless.

interim orders as they could violate a non-custodial parent's constitutional right to due process. That was not the situation here.

In the case at bar, the PFA court appropriately considered the risk of abuse posed by Husband to Wife and the child when granting Wife temporary sole custody pursuant to Section 6108(a)(4). Its decision was not an abuse of discretion.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/19